IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSATA SOFTWARE, INC., F/K/A ) <br> TRILOGY SOFTWARE, INC.; and ) <br> VERSATA DEVELOPMENT GROUP, ) <br> INC., F/K/A TRILOGY DEVELOPMENT ) <br> GROUP, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CLOUD9 ANALYTICS, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 12-925-LPS |

**REPORT AND RECOMMENDATION**

Presently pending before the Court is Defendant Cloud9 Analytics, Inc.'s ("Defendant" or "Cloud9") motion (the "Motion") seeking to (1) dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs Versata Software, Inc. and Versata Development Group, Inc.'s (collectively, "Plaintiffs" or "Versata") induced infringement claims in Plaintiffs' Second Amended Complaint ("SAC"); and (2) strike the induced infringement-related relief sought in the SAC. (D.I. 25)[1]

For the reasons that follow, I recommend that Defendant's Motion be GRANTED without prejudice.

**I. BACKGROUND**

On July 19, 2012, Plaintiffs commenced this action, asserting that Defendant directly and

---

[1] Because the motion to strike is clearly related to the merits of the motion seeking dismissal of the induced infringement claims (and indeed, is not addressed separately by Defendant in its briefing), and since the success of the motion to strike is dependent upon the success of the motion to dismiss, the Court will simply focus herein on the merits of the motion to dismiss.

indirectly infringes the two patents-in-suit, U.S. Patent Nos. 6,834,282 ("the '282 patent") and 7,203,701 ("the '701 patent"). (D.I. 1) The accused products are Defendant's software products relating to sales forecasting and pipeline management solutions. (*Id.*) Defendant later moved to dismiss that first Complaint for various reasons, including Plaintiffs' alleged failure to state a claim for indirect infringement. (D.I. 7)

Instead of responding to Defendant's motion, Plaintiffs filed a First Amended Complaint ("FAC") on October 23, 2012; the FAC included claims of direct infringement and induced infringement as to the two patents-in-suit. (D.I. 11) The allegations of induced infringement largely tracked the elements for that type of claim, and said little more. For example, as to their allegation that Defendant specifically intended to induce infringement by its "customers, licensees and end users" ("end users") through the end users' use of the allegedly infringing software products, Plaintiffs alleged only that Defendant "actively induced such infringement by continuing to sell and support the Infringing Products." (*Id.* at ¶¶ 31, 36)

Defendant thereafter moved, *inter alia*, to dismiss the inducement claims. (D.I. 12, 13) After a hearing held on May 3, 2013, Judge Leonard P. Stark granted Defendant's motion to dismiss those claims, noting that "[a]ll that is alleged with respect to specific intent to induce the end user to infringe is really just legal conclusion and conclusory factual assertions, essentially tracking the statute," which was not "adequate[.]" (D.I. 23 at 20) Judge Stark permitted Plaintiffs leave to amend so that they could "attempt to state specific facts from which a plausible inference can be drawn that the defendant has acted with specific intent to induce its end users to infringe the plaintiffs' patents[,]" noting that cases have pointed to the induced infringer's provision of "user manuals, marketing materials [and] advertising" to the end user as examples

2

of the types of conduct that might plausibly suggest such intent. (*Id.* at 20-21)

On June 6, 2013, Plaintiffs filed the SAC, which again contained, *inter alia*, claims of induced infringement as to both of the patents-in-suit. (D.I. 24)[2] Defendant then filed the instant Motion. (D.I. 25) On February 4, 2014, Judge Stark referred the Motion to the Court for resolution. (D.I. 42)

## II. LEGAL STANDARD

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[2] The SAC was mistakenly titled "Plaintiffs' First Amended Complaint[,]" though in fact it is the second amended complaint filed by Plaintiffs. (D.I. 26 at 2 n.1; D.I. 27 at 2)

3

to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. DISCUSSION

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

With regard to pleading an induced infringement claim, a plaintiff must, *inter alia*, allege facts plausibly showing that the defendant had knowledge that the alleged direct infringer's acts constituted infringement. *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344, at *1 (D. Del. May 24, 2013) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). It is this pleading requirement that Defendant here asserts has not been met, as Defendant argues that Plaintiffs have "never offered . . . a detailed description of ***how the accused products*** [used by end users] ***allegedly infringe***." (D.I. 28 at 1) (emphasis in original).[3] While the plaintiff need not "prove its

---

[3] A plaintiff must also plausibly allege that the defendant had knowledge of the patents-in-suit; here, Plaintiffs have limited their allegations of inducement to the time period after they served their original Complaint, (D.I. 27 at 4), at which time Defendant had the requisite knowledge of the patents' existence. *See Clouding IP, LLC v. Google Inc.*, C.A. No. 12-639-LPS, 2013 WL 5176702, at *1 (D. Del. Sept. 16, 2013). In addition, a plaintiff need allege facts to allow for the plausible inference that the indirect infringer had the specific intent to induce infringement by the direct infringer (that is, that the indirect infringer *encouraged* the direct infringement). *See Pragmatus AV, LLC*, 2013 WL 2295344, at *1; *see also Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'")

4

case at the pleading stage[,]" a mere "'formulaic recitation'" in the complaint of the language regarding this requirement in insufficient. *In re Bill of Lading*, 681 F.3d at 1339, 1346 (quoting *Twombly*, 550 U.S. at 545); *see also Pragmatus AV, LLC v. TangoMe, Inc.*, Civil Action No. 11-1092-LPS, 2013 WL 571798, at *12-13 (D. Del. Feb. 13, 2013).

Our Court, when addressing this issue, has tended to require at least some specific factual allegations demonstrating that the indirect infringer knew of a relationship between the use of the accused product and infringement of the asserted patent. When complaints contain factual allegations setting out such a connection between product and patent-in-suit (more than simply

---

(emphasis added) (citation omitted). Although Defendant at times asserts that Plaintiffs have not pled facts sufficient to show how Defendant "encourages [] infringing conduct[,]" (D.I. 26 at 1), Defendant's briefing makes clear that its argument most directly relates to the purported insufficiency of the allegations as to *knowledge of how what its end users are doing* allegedly infringes the patents-in-suit (not to an asserted a lack of facts pled regarding how Defendant has allegedly *encouraged* that infringement to continue), (D.I. 28 at 2 ("It doesn't matter how many marketing details Versata cites in the amended complaint. Without [knowledge that its products infringe or that customer use would constitute infringement] none of those facts would suggest a specific intent to induce.")). The SAC does include a number of paragraphs asserting that Defendant encourages its end users' infringement by: (1) advertising and promoting its products on its website; (2) providing written and oral instructions and training to its customers regarding how to use the allegedly infringing products; and (3) providing customized demonstrations and technical support for existing and potential customers regarding how to use those products. (D.I. 24 at ¶¶ 21-23) These types of allegations are of the kind that our Court has found adequate to plausibly suggest encouragement of infringement, so long as there is some relationship between that conduct and the direct infringer's actions that are said to give rise to infringement. *See, e.g., Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, Civ. No. 12-1277-SLR, 2013 WL 4017096, at *3-4 (D. Del. Aug. 6, 2013) (finding specific intent sufficiently pled where defendants were alleged to have, after being provided with notice of alleged infringement, induced their customers to infringe the patent-in-suit by "making, using, importing, selling and/or offering for sale the [accused fax-capable products] for use by customers and others and also providing those customers and others with technical support and services [and] detailed explanations, instructions and information as to arrangements, applications and uses" of the accused products that "promote and demonstrate how to use" the accused products "in a manner that would infringe [the patent-in-suit]").

5

identifying the product and patent), courts have permitted inducement claims to go forward.[4] For instance, in *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772 (D. Del. 2013), this Court concluded that the patentee had met its burden to sufficiently allege that the indirect infringer had knowledge that the induced acts constituted patent infringement, where the patentee pled:

> ***For example***, [the alleged indirect infringer] ***is aware that the infringing soft start circuit is a default feature of the controller products*** incorporating this circuit, that the softstart circuit is always present and cannot be disabled by a purchaser of the controller ***and, therefore, that*** [the indirect infringer's] ***customers will infringe the*** [patent-in-suit] ***by using the default softstart feature*** or by incorporating the infringing controller in other products, and that subsequent sales of such products would also be a direct infringement.

*Fairchild Semiconductor Corp.*, 935 F. Supp. 2d at 778 (emphasis in original). Thus, with regard to an allegation of post-suit induced infringement, while a plaintiff need not provide a detailed, step-by-step description of the alleged infringement in the complaint, this Court has required some identification of *how* it is that use of the accused product infringes the patent, in order to plausibly assert that the indirect infringer knew that the downstream use of its products constitutes patent infringement. *Id.*[5] Conversely, where a plaintiff's complaint failed to include

---

[4] Notably, while the sufficiency of allegations of direct infringement are measured by whether they comply with Form 18 of the Federal Rules of Civil Procedure (which in most cases requires that a plaintiff merely identify the accused product without further explanation of how that product infringes), the general principles of *Twombly* and *Iqbal* apply to indirect infringement claims. *In re Bill of Lading*, 681 F.3d at 1334, 1336-37.

[5] *See also, e.g., Clouding IP, LLC v. Rackspace Hosting, Inc.*, C.A. No. 12-675-LPS, 2014 WL 495752, at *3 (D. Del. Feb. 6, 2014) (denying motion to dismiss induced infringement claims where plaintiff alleged sufficient facts to, *inter alia*, explain how it was that the direct infringers' use of the products amounted to infringement of the patent); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 564-66 (D. Del. 2012) (denying motion to dismiss induced infringement claims where complaint, which set out how the direct infringers would use

"factual allegations . . . about how the sale of [d]efendants' products relates to the patented method referenced in the [asserted] patent," courts have concluded that this knowledge requirement of induced infringement is not adequately supported. *E.I. DuPont De Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *7-8 (D. Del. Sept. 28, 2012) (granting motion to dismiss induced infringement claims where plaintiff's complaint failed to include such facts).[6]

Here, the relevant allegations in Plaintiffs' SAC with respect this requirement of induced infringement are:

> 18. Cloud9 makes, uses, licenses, sells and offers for sale . . . software products that infringe the '282 and '701 patents, including the Cloud9 Pipeline Accelerator and the Cloud9 Intelligent Sales Forecasting software suites (the "Infringing Products"). The Infringing Products are derived from, incorporate, or otherwise utilize the systems and methods protected by the '282 and/or '701 patents.

---

accused apparatuses in an infringing manner, sufficiently identified "the allegedly infringing conduct[,]" among other requirements).

[6] *See also, e.g., Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*, Civil Action No. 12-1111-GMS, 2013 WL 6058472, at *2 n.5 (D. Del. Nov. 18, 2013) (finding that plaintiff's bare "[a]llegations that [defendant] knew of [plaintiff's] patents and of its customers' use of [defendant's] products do not suffice to establish that [defendant] also knew that its customers' use of [defendant's] own products would amount to infringement of [plaintiff's] patents" and thus granting motion to dismiss induced infringement claims); *Bascom Research LLC v. Facebook, Inc.*, Nos. C 12-6293 SI, C 12-6294 SI, C 12-6295 SI, C 12-6296 SI, C 12-6297 SI, 2013 WL 968210, at *5 (N.D. Cal. Mar. 12, 2013) (granting motion to dismiss induced infringement claims where plaintiff failed to allege sufficient facts showing that, *inter alia*, defendants knew that the customer's acts constituted infringement, as complaint was devoid of "allegations setting forth the similarities between the claims of the patents-in-suit and the defendants' products"); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234-35 (D. Del. 2012) (granting motion to dismiss induced infringement claims where complaint at issue "fail[ed] to supply any factual allegations that would convert the post-suit knowledge into a plausible allegation of knowledge of the infringing use" as "[a]llegations of the marketing activities of the [d]efendants do not, on their own, demonstrate that [d]efendants knew such activities were infringing").

> 20. Cloud9 also actively induces . . . the infringement of the '282 and '701 patents by customers that use Cloud9's Infringing Products.
>
> 24. Cloud9 sells the infringing products with the intent that its customers use those products in an infringing manner.

(D.I. 24 at ¶¶ 18, 20, 24; *see also id.* at ¶¶ 43, 48 (indirect infringement counts wherein Plaintiffs allege that, *inter alia*, Defendant "intended that its [end users] infringe the [patents-in-suit] by their use of the Infringing Products")) These allegations do not do the job of plausibly asserting Defendant's knowledge that the end users' acts constituted infringement of the patents-in-suit, as Plaintiffs have simply identified the accused products and generically alleged that their use somehow infringes the asserted patents. Moreover, Plaintiffs' answering brief does not directly address how what is pled in the SAC could be said to overcome the nature of Defendant's objection here. (D.I. 27)

Plaintiffs seek leave to amend their SAC to the extent the Court finds any deficiencies therein. (D.I. 27 at 6) Defendant objects, arguing that "[b]ecause this is the third time [Plaintiffs] ha[ve] failed to adequately plead inducement, the claims should be dismissed with prejudice." (D.I. 26 at 1)

It is within the Court's discretion to grant leave to amend, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and amendment should be allowed "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2). It is true that Plaintiffs have now filed two amended complaints. But the Court notes that the parties' primary focus at oral argument regarding the insufficiency of the FAC's induced infringement claims was on the allegations with respect to Defendant's specific intent (or encouragement) regarding the direct infringement—and not on the particular (albeit related) knowledge requirement examined herein. (D.I. 23 at 16-18) The Court is also cognizant of the

fact that initial discovery in the case is only just underway, with Plaintiffs' preliminary infringement contentions due in a few months. (D.I. 32 at 2) It therefore recommends that Plaintiffs be granted leave to file a third amended complaint addressing the deficiency described above.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Court GRANT Defendant's Motion, but do so without prejudice to allow Plaintiffs the opportunity to file an amended complaint that addresses the deficiency referenced above.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: February 18, 2014

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[7] *Cf. Chalumeau Power Sys. LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL 6968938, at *2 (D. Del. July 18, 2012) (noting that certain of plaintiff's infringement claims had been dismissed twice, but not foreclosing plaintiff opportunity from amending complaint in the future).